11UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BERNARD GRAHAM,**<br>4857 Montega Drive<br>Woodbridge, Virginia 22192<br><br>        **Plaintiff,**<br><br>v.<br><br>**MERRICK GARLAND, in his official capacity**<br>**as Attorney General of the United States,**<br>**U.S. Department of Justice**<br>**950 Pennsylvania Avenue, NW**<br>**Washington, DC 20530-0001**<br><br>        **Defendant.** | **Civil Action No.:** |

**COMPLAINT**

**JURY TRIAL DEMANDED**

**Introduction**

1. This is an action for discrimination on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). The United States Marshals Service ("USMS," "Marshals Service," or "The Agency"), the oldest federal law enforcement agency, has a shameful history of systemic discrimination against African Americans like Plaintiff BERNARD GRAHAM, who was denied promotions and leadership opportunities necessary for advancement within the Marshals Service because of his race, while less qualified white colleagues were promoted and given leadership opportunities. He seeks

back pay, front pay, compensatory, nominal, and punitive damages together with attorneys' fees, costs and expenses.

### Parties

2. Plaintiff BERNARD GRAHAM is an African American retired United States Marshal Chief Inspector, who presently resides in Woodbridge, Virginia.

3. Defendant MERRICK GARLAND is the Attorney General of the United States and the head of the United States Department of Justice. The United States Marshals Service is a component of the United States Department of Justice and was Plaintiff GRAHAM's employer at all relevant times.

### Jurisdiction and Venue

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

5. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia. 28 U.S. Code § 1391(e)(1)(B).

### Exhaustion of Administrative Remedies

6. Plaintiff GRAHAM first contacted a USMS Equal Employment Opportunity ("EEO") counselor in May of 2008, about discrimination claims based on his failure to be selected for ten Merit Promotion opportunities, denial of leadership opportunities through, *inter alia*, the filing available positions outside the Merit Promotion Process with white employees. Those claims progressed to the Equal Employment Opportunity Commission ("EEOC").

7. While Plaintiff GRAHAM's claims were pending before the EEOC, on July 11, 2012, the EEOC granted class certification in *Fogg v. Dept. of Justice,* a case involving similar

discrimination claims by African American employees against the Marshals Service. Pursuant to Management Directive 110 ("MD110"), the EEOC's manual for resolution of discrimination claims in the Federal Sector, Plaintiff GRAHAM's claim was subsumed into the *Fogg* class action. Over Plaintiff GRAHAM's objection, the EEOC approved settlement of *Fogg* on July, 2024.

8.   More than 180 days have passed since Plaintiff GRAHAM first contacted the USMS EEO, and less than 90 days have passed since the EEOC approved the class action settlement. Accordingly, Plaintiff GRAHAM has exhausted his administrative remedies and timely filed this action in compliance with 29 CFR § 1614.407(b). *See* 42 U.S.C. § 2000e–16(c).

## Facts

9.   Plaintiff BERNARD GRAHAM, an African American, served in the United States Marine Corps for four years. After he was honorably discharged from the Marine Corps, Plaintiff GRAHAM worked as a trooper for the South Carolina State Police for six years. He was hired as a Deputy United States Marshal on February 26, 1990. His initial pay grade was GS-1811-7.

10.   Plaintiff GRAHAM served as a Deputy U.S. Marshal in the District of South Carolina for twelve years, during which time his pay grade increased from GS-1811-7 to GS 1811-12.

11.   Although he received generally excellent ratings on his annual performance reviews, performance awards, and career path salary increases, Plaintiff GRAHAM was not promoted at the same rate as his white colleagues. He was promoted to GS-1811-13 in 2002

after almost thirteen (13) years with the Marshals Service. Upon information and belief, Most white deputies were promoted to GS-1811-13 after 8 to 9 years with the USMS.

12. Starting in 2002, Plaintiff GRAHAM served as a Supervisory Inspector/Instructor at the USMS Training Academy at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, for approximately fifteen months.

13. In January of 2004, Plaintiff was transferred to Washington, D.C., where he served as a USMS Legislative Liaison, working in the office of the late United States Representative John Conyers, who also was an African American.

14. In September of 2006, Plaintiff GRAHAM was transferred to the USMS Judicial Security Division where he served for approximately eight months providing security to the Drug Czar appointed by President George W. Bush.

15. In May of 2007, Plaintiff GRAHAM was reassigned to the District of Columbia Superior Court, where he served as a Supervisory Deputy U.S. Marshal at material times. His pay grade stayed at the GS-1811-13 level, except for a brief period from July 6 to August 3, 2008, when he was promoted temporarily to a GS-1811-14 while serving as the Acting Assistant Chief Deputy U.S. Marshal. The acts of racial discrimination from which the claims at issue in this action arose occurred while he was assigned to Superior Court.

16. Plaintiff GRAHAM was promoted to a GS-1811-14 on August 1, 2010. He was told by one of his colleagues that the colleague overheard someone in upper USMS management say that Plaintiff GRAHAM "would never be promoted to a GS-1811-15."

17. In September of 2013, Plaintiff GRAHAM was assigned to the International Criminal Police Organization ("INTERPOL"), Washington as Deputy Chief of Staff and later Chief of Staff. Although his USMS colleagues who held this position were promoted to GS-1811-15, Plaintiff GRAHAM was not.

18. Plaintiff GRAHAM worked at INTERPOL Washington until his retirement from the USMS on December 31, 2018. He never advanced beyond GS-1811-14.

## The Merit Promotion Program

19. The USMS's Merit Promotion Plan ("MPP") was the mechanism for affording merit staffing and promotional opportunities within the USMS.

20. Vacancies for GS-1811 positions were posted for approximately three weeks. Candidates who wished to be considered for a particular Merit Promotion Announcement ("MPA") were to required submit a form USM-280B and other documentation to the USMS.

21. In order to apply for an MPA, a candidate must have taken the most recent biannual Merit Promotion Exam and must submit a Merit Promotion Open Season Application during the annual Open Season application period. The Merit Promotion application packages were reviewed by a panel of trained raters, who assigned points for each part of the candidate's package. The exam and application scores were aggregated and became the candidate's total score.

22. When the MPA position closed, applicants competing for GS-14 and GS-15 grade levels who had not been interviewed were scheduled for Structured Interviews. The 3-person Structured Interview Panels consisted of supervisory/managerial employees at the GS-14 and GS-15 grade levels who were trained interviewers.

23. The interviewers graded each applicant in eight separate areas: Perception, Decisiveness, Judgement (sic), Leadership, Organizing & Planning, Adaptability, Interpersonal, and Communications. The possible grades in each category were: Very Strong, Strong, Average, Weak, and Very Weak. The subjective nature of this grading process was used by the USMS to lower the Merit Promotion package scores of African American employees to prevent them from advancing in the Marshals Service.

24. The applicants for an MPA were ranked according to their aggregated exam and application package scores. Certificates of highly qualified candidates ("Cert Lists") were generated, which included at least the top five applicants, and others if separated from the 5th ranked candidate by less than one point.

25. The Cert List and interview scores on the applicants on the Cert List were sent to the District or Headquarters recommending officials, who ranked the applicants according to their preference, and forwarded the list to the Career Board.

26. The Career Board ("CB") consisted of a Chairperson and nine members, all of whom were GS-14 or GS-15 USMS supervisors or managers from across the country. It convened once every quarter. The CB reviewed the District and Headquarters recommendations, the Cert List, and the applicants' resumes. It generated a USM-57 6 (Career Board Notes) for each position that came before the CB.

27. The CB briefed the Director and other senior staff members on specific positions where the CB disagreed with the recommending official's recommendation.

28. The USMS Director made the final selection decision.

**Plaintiff's Experience Scores Were Manipulated
To Prevent His Promotion**

29. According to the MPP, all candidates are rated numerically, and those with the highest scores are considered the best qualified. The number of applicants on the best-qualified list is determined using the "significant break" method. A significant break in scores is generally considered a difference of greater than one point. A best-qualified list will not have fewer than five applicants unless fewer than five apply and are eligible.

30. The applications described in paragraphs 21-24, *supra*, received numerical scores in five areas: Experience, Training, Education, Awards, and Essay. The USMS provided specific, objective criteria for points awarded for Training, Education, and Awards. For example, an applicant received two (2) Training points for every training course greater than or equal to 80 hours completed in the last five years; twelve (12) Education points for a bachelor's degree; and two (2) Award points for each performance award in the last five years.

31. The criteria for the award of points for Experience were neither specific nor objective. The points credited for Experience were based on the subjective evaluation of the reviewing officials.

32. African American applicants in general, and Plaintiff GRAHAM in particular, received significantly fewer points for Experience than similarly situated white applicants, while the points for Experience credited to white applicants were inflated to ensure that white candidates were promoted and African American candidates were not.

33.     When his promotion package in place for the MPAs at issue was evaluated, Plaintiff GRAHAM was credited with fourteen (14) points for Experience. His Applicant Score was 64.03.

34.     Plaintiff GRAHAM was one of twenty-one (21) applicants for MPA 07-222. Plaintiff GRAHAM's Applicant Score of 64.03 placed him eleventh on the list of applicants. Only the top six applicants were included on the Cert List forwarded to the recommending official and the Career Board.

35.     At the time he applied for MPA 07-222, Plaintiff GRAHAM had been employed by the USMS for 17.9 years. Although only one of the six applicants on the Cert List had been employed longer than Plaintiff GRAHAM, all received significantly higher scores for Experience than GRAHAM, as follows:

   (1)   White, 16 years with USMS:  26 points      Applicant Score 80.43

   (2)   White, 19.5 years with USMS: 26 points     Applicant Score 77.08

   (3)   White, 13.25 years with USMS: 20 points    Applicant Score 76.24

   (4)   White, 12.67 years with USMS: 20 points    Applicant Score 71.44

   (5)   Hispanic, 9.58 years with USMS:18 points   Applicant Score 69.03

   (6)   White, 10 years with USMS:  20 points      Applicant Score 66.78

36.     The six candidates on the Cert List were credited with an average of 1.6 points per year employed by the Marshals Service. The top two candidates were credited with an average of 1.46 points per year. By contrast, Plaintiff GRAHAM was credited with 0.78 points per year. Had Plaintiff GRAHAM been   with 1.46 points per year, his Experience score would have been 26 and his Applicant Score would have been 76.03, placing him fourth on the Cert List.

37. Plaintiff GRAHAM applied for nine additional MPAs. Had his Experience score not been manipulated, and he would have been on the Cert List for all of those MPAs.

38. Even with his artificially lowered Applicant Score, Plaintiff GRAHAM should have made the Cert Lists for MPA 08-011and MPA 08-101 because his applicant score was less than one point lower than that of a white applicant included on the list.

### Plaintiff's Interview Scores Were Manipulated
### To Prevent His Promotion

39. The results of the structured interviews described in paragraph 23, *supra*, are based on the subjective opinions of the interviewers.

39. The interviewers rate African American candidates in general, and Plaintiff GRAHAM in particular, lower than comparable white candidates to prevent African Americans from advancing in the USMS.

40. Because of the intentional manipulation of scores, Plaintiff GRAHAM's applications were not submitted to the recommending officials or the Career Boards, resulting in less-qualified white candidates being selected for promotion, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

### Plaintiff Was Denied Leadership Opportunities
### In Favor of Less-qualified White Employees

41. Despite having performed well in positions of significant responsibility, Plaintiff GRAHAM did not advanced at the same pace as his white counterparts. The special assignments and mission leadership and command opportunities that may provide the basis for merit promotion were systematically steered towards white employees.

42. Plaintiff GRAHAM served for twenty-four (24) months as Senior Inspector in the Office of Congressional Affairs. While white employees who have served as Congressional Fellows on Capital Hill have advanced to GS-1811-15 positions or higher, the only other African-American Congressional Fellow resigned from the Marshals Service after not being promoted.

43. In 2008, notwithstanding Plaintiff GRAHAM's significant experience in the Office of Congressional Affairs, a newly-created position, "Deputy Chief of Congressional Affairs," was not advertised and was filled outside the Merit Promotion process with a white female who had no Capitol Hill experience.

### The Marshals Service Has Admitted That Plaintiff WasDenied Promotions Because of His Race

44. Upon receipt of Plaintiff GRAHAM's discrimination claims, the Marshals Service retained an outside contractor to investigate the claims in accordance with applicable Equal Employment Opportunity Commission directives and requirements, including 29 CFR § 1614.108.

45. A senior Marshals Service official who had served on the Career Board as both a member and chairperson from 2002 through 2006, told the investigators that Plaintiff GRAHAM "has an outstanding work history and is well-respected not only by members of the USMS but by several different branches of government." He stated that Plaintiff GRAHAM had "an impeccable record, conducted himself like a professional, and had established good rapport with ranking members of both DOJ and Congress."

46. When asked whether Plaintiff GRAHAM was not selected for any of the ten MPAs because of his race, the official said, "I strongly agree."

## CAUSE OF ACTION

### VIOLATIONS OF TITLE VII
### OF THE CIVIL RIGHTS ACT OF 1964,
### 42 U.S.C. § 2000, *et seq.*, AS AMENDED

### RACE DISCRIMINATION

47. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 46 of this Complaint as if set forth in full herein.

48. The USMS has discriminated against Plaintiff GRAHAM by treating him differently from and less preferably than similarly situated white employees, and by subjecting him to discriminatory denials of promotions to higher paying positions, discriminatory denials of training opportunities, discriminatory denials of awards and assignments, discriminatory disciplinary action, disparate terms and conditions of employment, and other forms of discrimination in violation of Title VII.

49. As a direct and proximate result of USMS's conduct, Plaintiff GRAHAM has suffered economic harm - including loss of compensation and other employment benefits - as well as emotional harm, anguish and humiliation.

50. USMS's policies, practices and/or procedures have produced a disparate impact Plaintiff GRAHAM with respect to the terms and conditions of his employment.

51. Because USMS's discriminatory conduct was continuous and persistent

throughout Plaintiff GRAHAM's employment, he is entitled to application of the continuing violation doctrine to all violations alleged herein.

52. Because of the discrimination he has suffered at USMS, Plaintiff GRAHAM is entitled to all legal and equitable remedies available under Title VII, including but not limited to attorneys fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BERNARD GRAHAM requests the following relief:

A. a declaratory judgment that the Marshals Service discriminated against Plaintiff GRAHAM on the basis of race in violation of Title VII;

B. back pay, front pay, lost benefits, and equitable monetary relief for lost compensation and job benefits;

C. any other equitable relief to which Plaintiff GRAHAM is entitled;

D. compensatory and punitive damages in an amount to be determined at trial;

E. litigation costs and expenses, including reasonable attorneys' fees;

F. pre-judgment and post-judgment interest on the amounts of equitable monetary relief awarded;

G. such other and further relief as the Court may deem just and proper.

Dated: September 9, 2024                    /s/ Marie Louise Hagen

                                                      Marie Louise Hagen, DC Bar No. 412411
Law Offices of Marie Louise Hagen, PLLC
P.O. Box 22
Sparrowbush, NY 12780
202-297-6053 phone
413-638-8429 facsimile
mlh@mlhagenlaw.com